UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MIKEL A. TOYE; LOUISE TOYE,

Plaintiffs,

v.

NEWREZ LLC, *et al.*,

Defendants.

Case No. 19-cv-02322-BAS-LL

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 13, 15)**

Plaintiffs Mikel and Louise Toye filed a First Amended Complaint ("FAC") alleging three causes of action for: (1) "enforcement of rescission under Truth in Lending Act § 1635 et seq."; (2) violation of California's Homeowner Bill of Rights; and (3) quiet title. (ECF No. 12.)  Bank of America, N.A. ("BANA"), Newrez LLC ("Newrez"), and Bank of New York Mellon ("BONY") filed Motions to Dismiss.  (ECF Nos. 13, 15.)  Plaintiffs responded (ECF Nos. 17, 20), and Defendants replied (ECF Nos. 23, 25).  The Court finds these matters suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS** the Motions to Dismiss.

# I.    BACKGROUND

## A.    Plaintiffs' Allegations

On June 13, 2006, Plaintiff Mikel Toye, as "a married man [and] as his sole and separate property," took out an adjustable rate mortgage for $522,000.00 on the Subject Property from Mortgageit, Inc. (not named as a defendant in this case).  (FAC ¶¶ 13–14.)  On June 21, 2006, Mikel Toye recorded an Interspousal Transfer Grant Deed transferring the Subject Property to him and his wife, Plaintiff Louise Toye, "husband and wife as joint tenants." (*Id.* ¶ 17.)

Plaintiffs further allege that the identity of the lender and the terms of the financing in the loan were "misrepresented," so Plaintiffs mailed a written notice of rescission on September 5, 2008.  (FAC ¶¶ 16, 18, Ex 1.)  "[N]o Defendant refunded the interest, finance charges or payments, or completed the steps of rescission."  (*Id.* ¶ 34.)  Further, "no Defendant filed a court action to seek an equitable re-ordering of the steps of rescission." (*Id.*)

Instead, on October 19, 2010, non-defendant Reconstrust Company, N.A., an affiliate of Defendant BANA, recorded a Notice of Default against the Subject Property ("2010 Notice of Default").  (FAC ¶ 19.)  To stop foreclosure, Plaintiffs were instructed to pay the full amount due to Defendant BONY.  (*Id.* ¶ 20.)

"On or about January 21, 2011, Plaintiffs recorded a Quitclaim Deed giving an undivided 50% interest in the [subject] property" to Judy and Steven Lucore, in exchange for a $30,000 loan from the Lucores, which was allegedly based on a promissory note dated August 20, 2006.  (FAC ¶ 24.)  On November 25, 2011, the Lucores filed Chapter 13 Bankruptcy.  (*Id.* ¶ 42.)  Neither a proof of claim nor a motion for relief from stay was filed in the Lucores' bankruptcy before an unlawful detainer action was filed against Plaintiffs. (*Id.* ¶ 43.)  Thus, the Lucores filed a motion for contempt for violation of their automatic stay, and it was granted with an order to vacate all foreclosure efforts against the Lucores. (*Id.* ¶ 44.)

19cv2322

On or about August 28, 2014, Plaintiff Louise Toye filed a Chapter 13 bankruptcy. (FAC ¶ 51.) In this bankruptcy, BONY filed its first Proof of Claim for debt on the Subject Property signed December 11, 2014. (*Id.* ¶ 52.) BANA claimed to be the loan servicer on the loan. (*Id.*) Louise Toye objected to the proof of claim, and the bankruptcy court found that evidence tended "to establish that at the time BONY filed its Claim, [BANA] was in possession of the Note and may not have had the authority to hold the Note as BONY's agent." (*Id.* ¶ 55.)

BONY and Louise Toye eventually agreed to remove the loan from the bankruptcy. (FAC ¶ 59.) And, on July 1, 2019, Defendant Newrez "sent Plaintiffs a statement claiming that they owed $64,991.61, and that there was a claimed 'outstanding principal' owed of $458,897.29." (*Id.* ¶ 60.) Newrez later sent Mikel Toye "a Notice of Default and Intent to Accelerate dated July 8, 2019 attempting to collect a claimed default of $64,997.61." (*Id.* ¶ 61.)

Plaintiffs filed their initial Complaint on December 5, 2019. (ECF No. 1.) Defendants filed motions to dismiss, claiming that the causes of action failed and were time-barred. (ECF Nos. 7, 10.) Plaintiffs now file this First Amended Complaint seeking in the first cause of action to complete the rescission of the loan begun on September 5, 2008. (FAC ¶¶ 64–103.) In the second cause of action, Plaintiffs seek injunctive relief under California Civil Code section 2924.12, which is part of California's Homeowner Bill of Rights ("HBOR"). (*Id.* ¶¶ 104–19.) Specifically, Plaintiffs claim that the "foreclosure documents recorded" failed to note that the loan had been rescinded in 2008 and that the "note had been found to be evidentiarily deficient by the bankruptcy court." (*Id.* ¶ 106.)

Plaintiffs file no third cause of action but skip to the fourth cause of action, requesting that the Court quiet title to the Subject Property based on the September 2008 rescission. (FAC ¶¶ 120–30.)

Defendants Newrez and BONY move to dismiss. (BONY & Newrez's Mot., ECF No. 13.) Defendant BANA also moves to dismiss. (BANA's Mot., ECF No. 15.)

19cv2322

Defendants assert that the causes of action are barred by their statutes of limitations and are otherwise deficient.

### B.   Requests for Judicial Notice

To support their Motion to Dismiss, Newrez and BONY request judicial notice of several recorded documents for the Subject Property, including the Deed of Trust underlying this dispute and a second Notice of Default recorded on September 11, 2019 ("2019 Notice of Default").  (ECF No. 14.)  These Defendants also request judicial notice of certain filings from Plaintiffs' bankruptcy cases.  (*Id.*)  In addition, BANA requests judicial notice of the same Deed of Trust and the 2019 Notice of Default.  (ECF No. 16.)  Plaintiffs "object and oppose that any" of these documents "be used for determination of the facts of this matter on the basis that each and every document contains hearsay statements that are subject to dispute and therefore, are improper matters for judicial notice."  (ECF Nos. 18, 21.)

Federal Rule of Evidence 201 provides that courts may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination.  *See* Fed. R. Evid. 201(b).  In the foreclosure context, courts routinely take judicial notice of publicly-recorded documents, including deeds of trust and notices of default, to resolve motions to dismiss.  *See, e.g.*, *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1040 (C.D. Cal. 2015) (collecting cases); *see also Mann v. Nationstar Mortg., LLC*, 632 F. App'x 410, 412 (9th Cir. 2016); *Gale v. First Franklin Loan Servs.*, 599 F. App'x 286, 287 (9th Cir. 2015).

The Court finds it appropriate to take judicial notice of the requested title documents, including the 2006 Deed of Trust, the 2010 Notice of Default, and the 2019 Notice of Default.  These documents bear directly on Plaintiffs' claims and are appropriate subjects of judicial notice.  Further, although Plaintiffs' factual allegations do not plainly mention the recording of the 2019 Notice of Default, (*see* FAC ¶¶ 13–63), they ask the Court to enjoin nonjudicial foreclosure proceedings, (*see id.* ¶¶ 104–19).  In doing so, their second cause of action mentions Defendants recorded a "Shellpoint NOD . . . to affect an

unauthorized trustee sale." (*Id.* ¶ 109.)  There is no dispute that the 2019 Notice of Default is the referenced document.

That said, the Court only takes judicial notice of the existence of these documents and their content, not the truth thereof.  *See, e.g.*, *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1085 (S.D. Cal. 2016) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)) ("While matters of public record are proper subjects of judicial notice, a court may take notice only of the existence and authenticity of an item, not the truth of its contents."). The Court declines to take judicial notice of the other requested documents because they are not necessary for the Court's resolution of Defendants' Motions to Dismiss.

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A court need not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.  ANALYSIS

### A.  Count One—Enforcement of Rescission

Under the Truth in Lending Act ("TILA"), if a creditor fails to make the required disclosures, a borrower is given three years from the loan's consummation date to rescind certain loans.  *Hoang v. Bank of America, N.A.*, 910 F.3d 1096, 1098 (9th Cir. 2019) (citing 15 U.S.C. § 1635(f)).  "Borrowers may effect that rescission simply by notifying the creditor of their intent to rescind within the three-year period."  *Id.*  (citing *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 262 (2015)).  "Within 20 days after the creditor receives a notice of rescission, the creditor must take steps to wind up the loan."  *Id.* at 1100 (citing 15 U.S.C. § 1635(b)).  "'Upon the performance of the creditor's obligations under this section, the [borrower] shall tender the property to the creditor . . . [or] tender its reasonable value.'  Once both creditor and borrower have so acted, the loan has been wound up."  *Id.* (alterations in original) (citation omitted) (quoting 15 U.S.C. § 1635(b)).

In this case, Plaintiffs allege the terms of the loan taken out on June 13, 2006, "were misrepresented."  (FAC ¶ 18.)  Therefore, Plaintiffs timely mailed a notice of rescission on September 5, 2008.  (*Id.*)  However, the rescission was apparently ignored, and on October 19, 2010, a Notice of Default was recorded against the property for non-payment of the rescinded mortgage.  (*Id.* ¶ 19.)  The creditor did not take steps to wind up the loan, nor was the loan wound up.  (*Id.* ¶ 34.)  Nonetheless, Plaintiffs waited another nine years before filing this action to enforce rescission of the loan.

The facts in *Hoang* were remarkably similar to the facts in this case.  In *Hoang*, the borrower sent a notice of intent to rescind because of improper notices within three years of financing the loan.  910 F.3d at 1099.  The lender took no action.  *Id.*  The Ninth Circuit then addressed the issue: "when a borrower effectively rescinds a loan under TILA, but no steps are taken to wind up the loan, when must suit be brought to enforce that rescission?" *Id.* at 1100.  The plaintiff in *Hoang*, just like Plaintiffs in this case, argued that, as long as the rescission had been accomplished in three years, no other statute of limitations applied. *Id.* at 1101.  The Ninth Circuit disagreed.

The Ninth Circuit concluded that there is a statute of limitations applicable to TILA rescission enforcement actions.  *Id.*  The court must borrow from analogous state law to determine what that statute of limitations is.  *Id.*  Since a loan agreement is a written contract, any action to rescind that loan (under TILA or otherwise) arises out of that written agreement, and, therefore, the statute of limitations applicable to breach of contract applies to such an action.  *Id.*  The statute of limitations for a breach of contract action in California is four years.  Cal. Civ. Proc. Code § 337; *see also Jamali v. Martingale Invs., LLC*, No. B290141, 2019 WL 5956925, at *8 (Cal. Ct. App. Nov. 13, 2019) (unpublished) (discussing *Hoang* and using California's four-year statute of limitations for a quiet title claim based on rescission under TILA).  Plaintiffs in this case waited nine years before filing this action to enforce rescission of the loan.  Therefore, the first cause of action is barred by the statute of limitations.

Plaintiffs argue that *Hoang* was wrongly decided because it contradicts the Supreme Court's decision in *Jesinoski*.  (Opp'n to BANA's Mot. 14:27–15:2, ECF No. 17.)  But *Hoang* specifically addressed *Jesinoski* and found it left open the issue of "when a suit to enforce the rescission must be brought after a lender's failure to act on that notice of rescission."  910 F.3d at 1100.  *Hoang* squarely addressed that issue.

Plaintiffs further argue that *Hoang* was based on Washington state law, whereas the property at issue in this case is located in California.  (Opp'n to BANA's Mot. 15:3–8.) This Court agrees.  Because the property at issue is located in California and not

Washington, California's four-year statute of limitations applies and not Washington's six-year statute of limitations. *See Jamali*, 2019 WL 5956925, at *8. Finally, Plaintiffs argue that the statute of limitations begins to run at the time of the breach. (Opp'n to BANA's Mot. 15:8–15.) Again, the Court agrees. Plaintiffs are arguing that Defendants should have honored the rescission notice mailed on September 5, 2008. Thus, the breach occurred when Defendants failed to do so. *See Hoang*, 910 F.3d at 1102. The breach occurred long before this lawsuit was filed in December 2019, and well outside the four-year statute of limitations. Hence, this claim must be dismissed.

Further, although generally a court granting a motion to dismiss should grant leave to amend, leave need not be granted when any amendment would be an exercise in futility, "such as when the claims are barred by the applicable statute of limitations." *Hoang*, 910 F.3d at 1103 (citing *Platt Elec. Supply Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008)). Granting Plaintiffs leave to amend their rescission claim under TILA in a Second Amended Complaint would be futile. This claim's untimeliness "is not a problem that can be solved by changes to the pleadings," and the Court discerns "no additional facts or alternative theories that could be added" to the First Amended Complaint to make the rescission claim timely. *See Randhawa v. Bank of New York Mellon*, No. 2:18-cv-02244-JAM AC PS, 2019 WL 1294447, at *4 (E.D. Cal. Mar. 21, 2019) (reasoning granting leave to amend a time-barred TILA rescission claim would be futile), *adopted by* 2019 WL 2160356 (E.D. Cal. Apr. 17, 2019).[1] Thus, the Court will dismiss this claim with prejudice.

## B. Count Four—Quiet Title

The Court next addresses Plaintiffs' quiet title claim because it is derivative of their TILA rescission claim. A cause of action to quiet title must describe: (1) the property; (2) the basis of the plaintiff's title; (3) the adverse claims to the plaintiff's title; (4) the date

---

[1] *See also, e.g.*, *Madsen v. Bank of Am. N.A.*, No. 1:18-CV-00803-CL, 2019 WL 1373688, at *3 (D. Or. Mar. 6, 2019) (reasoning time-barred TILA rescission claim should be dismissed with prejudice), *adopted by* 2019 WL 1371134 (D. Or. Mar. 25, 2019); *Wennekamp v. Carrington Mortg. Servs., LLC*, No. 1:18-cv-01374-DAD-SAB, 2019 WL 528440, at *5 (E.D. Cal. Feb. 11, 2019) (same).

as of which the determination is sought; and (5) a prayer for giving superior title to the plaintiff against the adverse claims.  Cal. Civ. Proc. Code § 761.020.  Further, the court examines "the underlying theory of relief to determine the applicable period of limitations" for a quiet title claim.  *Salazar v. Thomas*, 236 Cal. App. 4th 467, 476 (2015).  This inquiry "requires the court to identify the nature (i.e., the 'gravamen') of the cause of action."  *Id.* (quoting *Hensler v. City of Glendale*, 8 Cal. 4th 1, 22 (1994)).

Plaintiffs ask the Court to quiet title to the Subject Property based on the attempted 2008 rescission discussed above.  (FAC ¶¶ 119–29.)  Plaintiffs' theory is that because the loan and its accompanying deed of trust were "rescinded in 2008," their "title to the Subject Property is superior to all others."  (*See id.* ¶¶ 120–24.)  Hence, Plaintiffs ask the Court to quiet title in their favor and against Defendants' purportedly adverse claims to the Subject Property.  (*Id.* ¶¶ 124–27.)

This claim is deficient for the same reasons as Plaintiffs' TILA rescission claim.  The gravamen of the quiet title claim is their TILA rescission theory of relief.  Therefore, the statute of limitations for this claim is the same as the one discussed above.  *See Jamali*, 2019 WL 5956925, at *8 ("To determine the statute of limitations that applies in a quiet title action, we refer to the underlying theory of relief, which in this case is the TILA rescission.").  And because the TILA rescission theory underlying Plaintiffs' quiet title claim is barred by the statute of limitations, their quiet title claim also fails on this basis.  *See id.* (reasoning that the trial court did not abuse its discretion in refusing leave to amend to state a quiet title claim based on TILA rescission because "the statute of limitations barred an action based on rescission under the TILA").  Moreover, granting leave to amend this claim would similarly be futile.  Given that the time-barred TILA rescission claim cannot be saved by amendment, Plaintiffs' derivative quiet title claim cannot be salvaged either.  *See id.*  Therefore, the Court will dismiss this claim with prejudice.

## C.   Count Two—Violation of the HBOR

Plaintiffs' remaining claim alleges that Defendants are violating California's Homeowner Bill of Rights.  (FAC ¶¶ 104–19.)  Plaintiffs seek "an injunction" against

Defendants to stop a trustee sale—a nonjudicial foreclosure—of the Subject Property "until Defendants have cured all material violations of HBOR." (*Id.* ¶ 116.)

"In the HBOR, the [California] Legislature addressed when courts may intercede in the nonjudicial foreclosure scheme." *Lucioni v. Bank of Am., N.A.*, 3 Cal. App. 5th 150, 161 (2016). California's nonjudicial foreclosure scheme is tied to deeds of trust, which "have largely replaced mortgages as the primary real property security device" used in the state. *See Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125 (2011).

"A deed of trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee. 'The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 926 (2016) (quoting *Biancalana v. T.D. Serv. Co.*, 56 Cal. 4th 807, 813 (2013)). California's "nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." *Id.* The nonjudicial foreclosure process starts with the trustee recording a notice of default and election to sell. Cal. Civ. Code § 2924(a)(1). After a waiting period, if "the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder." *Yvanova*, 62 Cal. 4th at 927 (citing Cal. Civ. Code § 2924g(a)).

The California Legislature originally enacted the HBOR in 2012, while the state was "still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007."[2] *Lucioni*, 3 Cal. App. 5th at 157. "Much of the HBOR contains procedures to help borrowers obtain alternatives to foreclosure." *Id.* The law also created two

---

[2] "As enacted, many sections of the HBOR were subject to a sunset provision, effective January 1, 2018. However, the Legislature re-enacted many of its provisions, effective January 1, 2018." *Quach v. Specialized Loan Servicing LLC*, No. H044641, 2020 WL 606776, at *4 (Cal. Ct. App. Feb. 5, 2020) (citation omitted).

statutory provisions, California Civil Code sections 2924.12(a)(1) and 2924.19(a)(1), which "allow a borrower to enjoin a foreclosure when a lender violates other specified HBOR sections." *Id.* Most of the specified sections "place duties upon a lender before it may record a notice of default." *See id.*

Plaintiffs rely on one of the HBOR's injunctive relief provisions—section 2924.12(a)(1)—to bring their second cause of action. (FAC ¶¶ 105, 116.) To enjoin a nonjudicial foreclosure under this provision, Plaintiffs must state a cause of action for a "material violation" of one of seven statutory provisions: California Civil Code sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17. *See* Cal. Civ. Code § 2924.12(a)(1); *see also Lucioni*, 3 Cal. App. 5th at 158. Plaintiffs identify several of these provisions as support for their second cause of action.[3]

### 1.      Section 2924.17

This provision of the HBOR provides that "[a] declaration recorded pursuant to [Civil Code] Section 2923.5 or pursuant to Section 2923.55" and "a notice of default . . . recorded by or on behalf of a mortgage servicer . . . shall be accurate and complete and supported by competent and reliable evidence." Cal. Civil Code § 2924.17(a). Further, section 2924.17 requires that before these items are recorded, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." *Id.* § 2924.17(b).

The California Court of Appeal interpreted this provision in *Lucioni v. Bank of America, N.A.*, 3 Cal. App. 5th 150 (2016). There, the borrower sought to enjoin his foreclosure under a separate provision of the HBOR, California Civil Code section

---

[3] Plaintiffs' HBOR claim is captioned with section 2924.17. (FAC 16:4–6.) That said, Plaintiffs mention both sections 2924.17 and 2924.9 in the allegations for their cause of action. (*See id.* ¶¶ 106–07, 112–14.) Further, they emphasize "section[] . . . 2923.7" in one paragraph and include a factual allegation that relates to this statute's requirements in another paragraph. (*See id.* ¶¶ 104, 117.) In generously construing Plaintiffs' pleading, the Court will address each of these three mentioned provisions—sections 2924.17, 2924.9, and 2423.7.

2924(a)(6).  This statute provides that only the holder of the beneficial interest under a deed of trust may initiate the foreclosure process.  Cal. Civ. Code § 2924(a)(6).  The "gravamen" of the *Lucioni* borrower's claim was that the defendants, "as the foreclosing lenders, lacked the authority to foreclose on the property because they were not properly assigned an interest in the deed of trust."  3 Cal. App. 5th at 157–58.  However, the Court of Appeal noted that the HBOR's provisions authorizing injunctive relief for enumerated violations do not mention section 2924(a)(6).  *Id.* at 158–59.  Therefore, although the HBOR may allow the borrower to bring a "postforeclosure cause of action for damages" based on the defendants allegedly initiating the foreclosure without a valid interest in the property, the borrower could not preemptively stop the foreclosure on this basis.  *Id.* at 161.

The Court of Appeal also considered whether the borrower could amend his complaint to rely on section 2924.17—the provision Plaintiffs invoke here—to reach a different result.  *Lucioni*, 3 Cal. App. 5th at 161–62.  The borrower argued this provision "makes it 'the foreclosing entity's duty to show it has the right to foreclose.'"  *Id.* The Court of Appeal rejected this argument.  *Id.* at 163.  It explained:

> Section 2924.17 creates a procedural right directed at the requirements for a *declaration* that a different HBOR provision (§ 2923.55) requires a mortgage servicer to file at the time of the notice of default.  Subdivision (a) of section 2924.17 states that the declaration must be "accurate and complete and supported by competent and reliable evidence."  The purpose of the declaration, as explained by section 2923.55, is to ensure that particular information is provided to the borrower before the notice of default is filed. Subdivisions (a) and (b) of section 2923.55 provide that the foreclosing entity may not record a notice of default unless it first sends the borrower specified information, including, among other things, a statement that the borrower may request "[a] copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose."  Section 2923.55, subdivision (c) requires that the foreclosing entity file, with the notice of default, a declaration stating that it has contacted the borrower, tried with due diligence to contact the borrower, or that no contact was required because the property owner did not meet the statutory definition of "borrower."  This is the declaration referenced in section 2924.17. The statute does not require the declaration to contain a statement

19cv2322

about the right to foreclose.  The declaration concerns only the lender's efforts to contact the borrower to provide the required information.

Another subdivision of section 2924.17 contains an important additional requirement for the declarant.  Subdivision (b) of section 2924.17 states that before filing the declaration, a mortgage servicer "shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."  The statute, however, does not require a statement in the declaration about the default and the right to foreclose.  Subdivision (b) of section 2924.17 is directed at ensuring the foreclosing entity's "review[ ]" of its right to foreclose.

*Id.* at 162–63 (footnotes omitted).

Simply put, "[s]ections 2924.17 and 2923.55 do not create a right to litigate, preforeclosure, whether the foreclosing party's conclusion that it had the right to foreclose was *correct*."  *Lucioni*, 3 Cal. App. 5th at 163.  Consequently, the Court of Appeal concluded the borrower could not amend his complaint to seek injunctive relief under section 2924.17 based on the defendants' alleged lack of authority to foreclose on the property.  *Id.* at 164; *see also, e.g.*, *Ghalehtak v. Fay Servicing, LLC*, No. 17-CV-05976-EMC, 2017 WL 4805589, at *7 (N.D. Cal. Oct. 25, 2017) ("California law does not contemplate a mini-trial on the merits of the lender's right to foreclose prior to the non-judicial foreclosure.").

The Court has taken judicial notice of the 2019 Notice of Default.  (ECF No. 14-3.)  Attached to the Notice of Default is the declaration required by California Civil Code section 2923.55.  (*Id.*)  In the declaration, a Loss Mitigation Specialist for Newrez declares, "The Mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'"  (*Id.*)  Hence, the declaration meets the HBOR's requirements discussed in *Lucioni*.  *See* 3 Cal. App. 5th at 163 ("The statute does not require the declaration to contain a statement about the right to foreclose.  The declaration concerns only the lender's efforts to contact the borrower to provide the required

1  information.").  Plaintiffs, however, advance several theories for why they believe section
2  2924.17 has nonetheless been violated.

3       Rescission and Note Deficiency.  Initially, Plaintiffs allege Defendants violated
4  section 2924.17 because the Notices of Default included "declarations that were not
5  'accurate and complete and supported by competent and reliable evidence' for the reasons
6  pleaded herein, including that the Subject Loan had been rescinded in 2008, and that the
7  endorsements on the Note had been found to be evidentiary deficient by the bankruptcy
8  court, among other reasons."  (FAC ¶ 106.)  Plaintiffs also allege, without more detail, that
9  Defendants failed before recording the documents to ensure that they have "reviewed
10 competent and reliable evidence to substantiate the borrower's default and the right to
11 foreclose, including the borrower's loan status and loan information."  (*Id.* (quoting Cal.
12 Civ. Code § 2924.17(b).)

13      This claim lacks plausibility.  Like the borrower in *Lucioni*, 3 Cal. App. 5th 150,
14 Plaintiffs seek to predicate their section 2924.17 claim on Defendants' purported lack of
15 authority to foreclose on the Subject Property.  Their time-barred TILA rescission theory,
16 discussed above, strikes at the requirement that an entity "initiating a foreclosure be legally
17 entitled to do so."  *See id.* at 155 (citing Cal. Civ. Code § 2924(a)(6)).  But the relevant
18 HBOR sections "do not create a right to litigate, preforeclosure, whether the foreclosing
19 party's conclusion that it had the right to foreclose was *correct*."  *See id.* at 163.  For the
20 same reasons expressed by the California Court of Appeal in *Lucioni*, the Court concludes
21 Plaintiffs cannot pursue an HBOR claim under California Civil Code sections
22 2924.12(a)(1) and 2924.17 on this basis.  *See id.* at 162–63; *see also, e.g.*, *Tanguma v. Law*
23 *Offices of Les Zieve*, No. F075930, 2020 WL 466632, at *16 (Cal. Ct. App. Jan. 29, 2020)
24 (concluding the trial court appropriately dismissed the plaintiff's claim under section
25 2924.17 based on her allegations challenging the defendant's "authority to file the Notice
26 of Default").  Moreover, as an independent ground for dismissal, the Court concludes
27 Plaintiffs cannot rely on their TILA rescission theory to support their HBOR claim because
28 the Court concluded that this theory is time-barred.

Plaintiffs' allegation regarding the note having "been found to be evidentiary deficient" also does not support a plausible claim under section 2924.17.  This allegation concerns whether an "endorsement in blank" on the note for the deed of trust is valid.  (FAC ¶¶ 55–57.)  As California's adoption of the Uniform Commercial Code explains: "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.'  When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  Cal. Com. Code § 3205(a); *see also In re Macklin*, 495 B.R. 8, 13 n.4 (Bankr. E.D. Cal. 2013) (noting under California law that "[a] holder of a note can enforce that note, even if it is in wrongful possession of the note (i.e., they found or stole the note), when that note has been endorsed in blank or to bearer").

Meaning, this theory for Plaintiffs' section 2924.17 claim concerns whether BONY—as opposed to a prior holder of the note—currently owns the beneficial interest of the loan and is "legally entitled to" initiate foreclosure under the corresponding deed of trust.  *See Lucioni*, 3 Cal. App. 5th at 155.  This claim is similarly implausible because it seeks to preemptively litigate BONY's right to foreclose.  *See id.* at 155–156; *see also Tjaden v. HSBC Bank USA, Nat'l Ass'n*, 681 F. App'x 641, 644 (9th Cir. 2017) (rejecting section 2924.17 claim based on lender's purported lack of authority to foreclose); *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 870 (N.D. Cal. 2017) (same); *cf. Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 814 (2016) (noting "California courts do not allow" preemptive suits challenging whether the defendant may "may initiate a nonjudicial foreclosure" because "they 'would result in the impermissible

interjection of the courts into a nonjudicial scheme enacted by the California Legislature.'").  Therefore, the Court rejects this theory for Plaintiffs' HBOR claim.[4]

Robo-Signers.  Plaintiffs also allege "it is a material violation of HBOR to use robo signers, which are recognized as forgeries and as individuals not reviewing competent or reliable evidence to sign or record instruments."  (FAC ¶ 113.)  "[D]istrict courts in this circuit have consistently found that robo-signing allegations are insufficient without some factual support."  *See Lobue v. Countrywide Home Loan, Inc.*, No. 14-CV-04878-BLF, 2015 WL 13385920, at *4 (N.D. Cal. July 29, 2015); *see also Tjaden*, 681 F. App'x at 644 ("And in any event, the defects alleged here, which include the Tjadens' allegation that the assignment of the beneficial interest under their deed of trust was robo-signed, would not be sufficient to satisfy even a post-foreclosure cause of action.").  Accordingly, Plaintiffs do not state a claim an HBOR claim under California Civil Code sections 2924.12(a)(1) and 2924.17 on this basis.

Remaining Allegations.  Plaintiffs include several other allegations that are derivative of their claim that the loan is invalid or that Newrez and BONY lack the authority to foreclose.  They allege the recorded documents were inaccurate because "Defendants were not owed money by Plaintiff[s]."  (FAC ¶ 111.)  They similarly allege that the "Declaration attached to the NODs falsely attested that BANA and later [NEWREZ] had the authority to contact the borrower."  (*Id.* ¶ 110.)  The Court concludes Plaintiffs do not state a plausible HBOR claim under sections 2924.12(a)(1) and 2924.17 based on these allegations for the same reasons discussed above.

In sum, the Court finds Plaintiffs' claim under sections 2924.12(a)(1) and 2924.17 lacks plausibility and is subject to dismissal.  The Court will dismiss this claim with leave

---

[4]  Furthermore, even if Plaintiffs could bring an HBOR claim on this basis, their pleading lacks sufficient factual allegations to demonstrate the note's blank endorsement is invalid.  The bankruptcy court did not find the endorsement to be invalid; it determined there could be a triable issue of fact.  And Plaintiffs must do more than reference a statement from the bankruptcy court; they must include the underlying factual allegations that support their assertion that "the endorsement in blank is invalid and unenforceable."  (*See* FAC ¶ 57.)

to amend.  That said, any amended claim must be consistent with this order, must not depend on Plaintiffs' time-barred allegation that their loan is invalid, and must plainly address HBOR's requirements concerning the 2019 Notice of Default.

### 2.    Section 2924.9

Plaintiffs also seek injunctive relief under section 2924.12(a)(1) based on an alleged material violation of section 2924.9.  (FAC ¶ 107.)  This section provides, in relevant part,

> (a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer . . . , within five business days after recording a notice of default . . . , a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:
>
> > (1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives . . . .

Cal. Civ. Code § 2924.9.

Plaintiffs allege Defendants "were required to offer alternatives to foreclosure on behalf *of the valid, legal creditor*, which Defendants failed to do, and therefore, Defendants are in material violation of Civil Code § 2924.9." (FAC ¶ 107 (emphasis added).)  Plaintiffs similarly allege that "Defendants could not offer legitimate alternatives to foreclosure where Defendants *did not identify or consult with an authorized creditor*." (*Id.* ¶ 108 (emphasis added).)  Hence, Plaintiffs claim Defendants "could not and did not offer such an authorized written communication within five business days after recording the [Notice of Default], or ever." (*Id.*)

Having reviewed Plaintiffs' pleading, the Court concludes Plaintiffs do not state a plausible HBOR claim based on section 2924.9.  Their conclusory allegations are intertwined with their time-barred theory that the loan has been rescinded or is invalid. (*See, e.g.*, FAC ¶¶ 108–09 (qualifying allegations with limiting language such as "authorized communication," "authorized creditor," "valid, legal creditor," "authorized written communication" and repeatedly arguing Defendants "could not" meet section 2924.9's requirements).  Given that Plaintiffs cannot proceed on this theory, their pleading

lacks well-pleaded factual allegations demonstrating that their current loan servicer has materially violated section 2924.9.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Therefore, the Court finds it appropriate to dismiss this claim.[5]  Provided Plaintiffs have not already exhausted the loan modification process, (*see* FAC ¶ 50), it is conceivable that Plaintiffs' servicer has not complied with section 2924.9 in connection with the 2019 Notice of Default.  Therefore, the Court will dismiss this claim without prejudice.  However, any amended section 2924.12(a)(1) claim based on section 2924.9 must not depend on Plaintiffs' time-barred allegation that their loan is invalid and must plainly address HBOR's requirements concerning the 2019 Notice of Default.

### 3.    Section 2923.7

Section 2923.7 provides that "[w]hen a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  Cal. Civ. Code § 2923.7.  California enacted section 2923.7 as part of its attempt "to eliminate the practice of dual tracking and to ameliorate its effects, by requiring lenders and loan servicers to designate a 'single point of contact' for each borrower in

---

[5] BANA also persuasively argues Plaintiffs' HBOR claim against it is time-barred.  (BANA's Mot. 4:24–5:10.)  Because HBOR does not contain its own statute of limitations, California law provides the limitations period is three years.  *See* Cal. Code Civ. Proc. § 338 (providing a claim must be brought within "three years" if it is "[a]n action upon a liability created by statute); *see also Marcus v. Bank of Am., NA*, No. CV 19-1747 PA (FFMx), 2019 WL 6357254, at *3 (C.D. Cal. Aug. 15, 2019).  Relying on this limitations period, BANA argues it has not "recorded any foreclosure-related documents within the past three years, and the notice of default forming the basis for this claim shows on its face that it was recorded by the foreclosure trustee at the direction of NewRez . . . as mortgage servicer on behalf of" BONY.  (BANA's Mot. 5:4–8.)  Plaintiffs do not provide a convincing response.  They argue their HBOR claim "relates to Defendants' collection activities in 2019 and [is] not time-barred," (Opp'n to BANA's Mot. 18:4–7), but the only factual allegation in their pleading from 2019 concerns a notice of default sent by "Shellpoint," not BANA, (*see* FAC ¶¶ 59–63).  The Court agrees that the First Amended Complaint lacks sufficient factual allegations to plausibly state an HBOR claim against BANA.

- 18 -

default." *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 943–44 (N.D. Cal. 2015) (quoting *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013)). "Dual tracking" refers to a "common bank tactic" where the bank continues to pursue foreclosure at the same time the borrower is seeking a loan modification. *See Jolley*, 213 Cal. App. 4th at 904. The concern is that "the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." *Id.* Section 2923.7's single point of contact provision "is intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Id.* at 904–05.

A violation of section 2923.7 "is actionable only when that violation is material." *Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 597, 603 (E.D. Cal. 2017); *see also* Cal. Civ. Code § 2924.12(a) (creating a cause of action to enjoin a "*material* violation" of section 2923.7 (emphasis added)). "A material violation is one where 'the alleged violation affected a plaintiff's loan obligations or the modification process.'" *Shupe*, 231 F. Supp. 3d at 603 (quoting *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015)); *see also Dowling v. Bank of Am., N.A.*, No. 1:14-cv-01041-DAD-SAB, 2017 WL 3284675, at *5 (E.D. Cal. Aug. 2, 2017) ("[F]ederal district courts have concluded that a material violation must interfere with a homeowner's right to be 'considered for' or to have 'a meaningful opportunity' to obtain a loan modification or other foreclosure alternative.").

Here, Plaintiffs "allege that they were not designated a single point of contact." (FAC ¶ 118.) However, the statute requires assignment of a single point of contact "[w]hen a borrower requests a foreclosure prevention alternative." *See* Cal. Civ. Code § 2923.7. Plaintiffs do not allege they requested such an available alternative for the nonjudicial

foreclosure commenced in 2019. (*See* FAC ¶¶ 105–19.)[6]  Moreover, Plaintiffs do not include factual allegations demonstrating how "the alleged violation" affected their "loan obligations or the modification process." *See Shupe*, 231 F. Supp. 3d at 603.  Their conclusory allegations suggesting otherwise are insufficient. *Cf. id.* (noting the plaintiffs "have not explained how the alleged denial of their right to a [single point of contact] in any way affected their loan obligations or the modification process"); *Nasseri*, 147 F. Supp. 3d at 944 (reasoning the plaintiff stated a section 2923.7 claim where the single point of contact allegedly "provided incorrect information regarding what foreclosure prevention alternatives were available to her"); *see also Foster v. Reverse Mortgage Solutions, Inc.*, No. CV-1910039 DSF (FFMX), 2020 WL 4390374, at *5–6 (C.D. Cal. May 13, 2020). The Court will not assume that the alleged violation of section 2923.7 was material. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, the Court finds it appropriate to dismiss this claim.  The Court will similarly dismiss this claim with leave to amend, but any amended section 2924.12(a)(1) claim based on section 2923.7 must not depend on Plaintiffs' time-barred allegation that their loan is invalid and must plainly address HBOR's requirements concerning the 2019 Notice of Default.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Newrez and BONY's Motion to Dismiss (ECF No. 13) and Defendant BANA's Motion to Dismiss (ECF No. 15).  The Court dismisses with prejudice Plaintiffs' count one to enforce a rescission under the Truth in Lending Act (FAC ¶¶ 64–103) because the claim is time-barred.  The Court

---

[6]  The only mention of a loan modification appears in Plaintiffs' factual allegations regarding bankruptcy proceedings from 2011 to 2015.  There, Plaintiffs allege: "At one point, Mikel and Louise Toye submitted an application to BANA for a Loan Modification.  It was denied."  (FAC ¶ 50.)  This allegation does not state a plausible section 2923.7 claim.  *See supra note 5*.

also dismisses <u>with prejudice</u> Plaintiffs' count four for quiet title (FAC ¶¶ 120–38) because the underlying theory of relief—rescission under TILA—is time-barred.  Finally, the Court dismisses <u>without prejudice</u> Plaintiff's count two under California's Homeowner Bill of Rights (FAC ¶¶ 104–19).  If Plaintiffs choose to file a Second Amended Complaint raising an amended HBOR claim that is consistent with the Court's analysis above, they must file the Second Amended Complaint no later than **August 21, 2020**.  Plaintiffs do not have leave to file any new causes of action or add new parties; new claims or new parties may only be added through a noticed motion for leave to amend.

**IT IS SO ORDERED.**

**DATED: August 7, 2020**

Hon. Cynthia Bashant
United States District Judge

- 21 -

19cv2322